**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| STERIGENICS U.S., LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action |
| | ) No. |
| | ) |
| ROGER PHELPS, Chair of the Cobb | ) |
| County Board of Tax Assessors, in his | ) |
| Individual Capacity; JOHN DEMAREST, | ) |
| Cobb County Board of Tax Assessors, in | ) |
| his Individual Capacity; CAROLYN | ) |
| TURNER, Cobb County Board of Tax | ) |
| Assessors, in her Individual Capacity; | ) |
| DANIEL POST, Cobb County Board of | ) |
| Tax Assessors, in his Individual Capacity; | ) |
| and THEA POWELL, Cobb County | ) |
| Board of Tax Assessors, in her Individual | ) |
| Capacity, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Sterigenics U.S., LLC ("Sterigenics") files this Complaint for

Declaratory Judgment against Defendants Roger Phelps, John Demarest, Carolyn

Turner, Daniel Post, and Thea Powell in their individual capacities (collectively,

"Defendants") for their unlawful acts under the color of their offices as members of

the Cobb County Board of Tax Assessors that are causing Sterigenics reputational and imminent economic harm.  In support of its claims, Sterigenics shows the Court as follows:

## INTRODUCTION

1.      Under the color of their offices as members of the Cobb County Board of Tax Assessors (the "BTA"), Defendants unlawfully cut the "Fair Market Values" of more than 5,000 residential properties within a two-mile radius of Sterigenics' Cobb County facility by ten percent in the BTA's 2020 annual tax assessments. Defendants publicly blame Sterigenics' facility for this purported devaluation, telling residents the devaluation was because of an "Epd-identified environmental issue" created by Sterigenics' facility.  Defendants took this action despite the Georgia Environmental Protection Division's (the "EPD") confirmation that the facility is in full compliance with all air regulations and despite the state-of-the art emissions controls enhancements Sterigenics voluntarily installed at the facility. And Defendants did so just days after this Court, in another action, entered an order enjoining the unlawful efforts of County officials to close the facility in response to political pressure the County has received from an activist group based on unfounded environmental claims the County has no authority to regulate.

2.      Defendants, who are political appointees of the Cobb County Board of

Commissioners, targeted Sterigenics with this devaluation of the more than 5,000 properties at issue arbitrarily and *admittedly* without supporting data showing a reduction in properties' values. Such a devaluation is unlawful under Georgia's laws that control property tax valuations. And it violates Georgia law's prohibition against arbitrary and unreasonable property valuations by the BTA.

3.     As a result of Defendants' unlawful devaluation of these properties, Sterigenics faces public scorn and an imminent, publicly-announced class action lawsuit on behalf of thousands of residents asserting Defendants' unlawful devaluation of their properties as the basis for their claims. Defendants' unlawful action therefore has caused Sterigenics substantial reputational damage, and will cause Sterigenics to suffer substantial economic harm from the imminent class action in which Sterigenics will have to face substantial unfounded liability and pay substantial sums in attorneys' fees and litigation expenses to defend itself.

4.     Sterigenics therefore files this Complaint to declare Defendants' arbitrary devaluation of these properties in the 2020 assessment unlawful and void.

## PARTIES, JURISDICTION, AND VENUE

5.     Sterigenics, formerly known as Griffith Laboratories and Griffith Micro Science, Inc., is a medical product sterilization company whose facilities are registered with and regulated by the U.S. Food and Drug Administration ("FDA").

6.      Sterigenics operates a medical product sterilization facility in Cobb County at a location presently identified by the address 2971 Olympic Industrial Drive, SE, Suite 116, Atlanta, Georgia (the "Facility").

7.      Sterigenics is a Delaware limited liability company whose sole member is Sotera Health LLC.  Sotera Health LLC is a Delaware limited liability company whose sole member is Sotera Health Holdings, LLC.  Sotera Health Holdings, LLC is a Delaware limited liability company whose sole member is Sotera Health Topco, Inc.  Sotera Health Topco, Inc. is a Delaware corporation with its headquarters and principal place of business in Broadview Heights, Ohio.  Consequently, Sterigenics is a citizen of Delaware and Ohio for the purposes of diversity jurisdiction under 28 U.S.C. § 1332.

8.      Defendant Roger Phelps is the Chair and a member of the BTA.  He is a resident of Cobb County and a citizen of Georgia for the purposes of diversity jurisdiction under 28 U.S.C. § 1332.

9.      Defendant John Demarest is the Vice Chair and a member of the BTA. He is a resident of Cobb County and a citizen of Georgia for the purposes of diversity jurisdiction under 28 U.S.C. § 1332.

10.   Defendant Carolyn Turner is a member of the BTA.  She is a resident of Cobb County and a citizen of Georgia for the purposes of diversity jurisdiction under 28 U.S.C. § 1332.

11.   Defendant Daniel Post is a member of the BTA.  He is a resident of Cobb County and a citizen of Georgia for the purposes of diversity jurisdiction under 28 U.S.C. § 1332.

12.   Defendant Thea Powell is a member of the BTA.  She is a resident of Cobb County and a citizen of Georgia for the purposes of diversity jurisdiction under 28 U.S.C. § 1332.

13.   Defendants, in their individual capacities, are proper parties to this case because of their official acts that are unauthorized by law and in violation of Sterigenics' rights, as set forth in this Complaint.  *Lathrop v. Deal*, 301 Ga. 408 (2017).

14.   This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

15.   Defendants' unlawful action will cause Sterigenics more than $75,000 in losses, including but not limited to the potential unfounded liability Sterigenics faces in, and the substantial legal fees and expenses it would have to incur to defend

itself against, the imminent class action lawsuit property owners intend to file on behalf of more than 5,000 residential property owners against Sterigenics to recover alleged property value losses based on Defendants' unlawful action, as well as the substantial reputational harm Defendants' unlawful action is causing Sterigenics.

16.    Sterigenics has standing to bring this action because it is suffering substantial reputational and imminent financial harm caused by Defendants' arbitrary and unlawful devaluation of more than 5,000 properties in tax assessment notices that Defendants publicly blame on Sterigenics' facility.  That unlawful action has caused Sterigenics to face public scorn, as well as potential unfounded liability and substantial legal fees and expenses in an imminent unfounded class action lawsuit on behalf of thousands of property owners to recover for alleged lost property values based on Defendants' across-the-board devaluation of their properties. Declaring Defendants' arbitrary devaluation of these properties unlawful and void under Georgia law will redress those reputational and financial harms by eliminating the unfounded basis for the reputational harm and the imminent lawsuit the homeowners intend to file.

17.    The Court has personal jurisdiction over Defendants because they are citizens of Georgia, and because the events giving rise to the claims in this Complaint occurred in Georgia.

18.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because Defendants are citizens and residents of Georgia and this Judicial District, and the events giving rise to the claims in this Complaint occurred in Cobb County within this Judicial District.

## FACTS

**I.      Sterigenics Has Sterilized Critical Medical Products at the Facility for Almost 50 Years.**

19.     Sterigenics' Facility is one of only five FDA-registered medical product sterilization facilities in Georgia.

20.     The Facility performs essential sterilizations of medical products that are critical to patient care.

21.     Sterigenics has used ethylene oxide ("EO") in gas form to sterilize products at the Facility since the early 1970s.

22.     Sterigenics' use of EO to sterilize medical products is mandated by specifically-defined sterilization processes for each product.

23.     In late 2019, the FDA recognized, "there are no readily available processes or facilities that can serve as viable alternatives to those that use ethylene oxide to sterilize these devices.  In short: this method is critical to our health care system and to the continued availability of safe, effective and high-quality medical devices."

7

24.     Sterigenics has operated the Facility as a medical products sterilization facility using EO with the County's knowing and repeated approvals for decades.

25.     The Facility is located in an area that the County's zoning ordinance has designated as a "Heavy Industrial" district, which the County "established to provide locations for heavy industrial uses such as . . . heavy manufacturing, chemical manufacturing and storage . . . ."  Sec. 134-231(1), Cobb County Ord.

26.     In 1994, the County Planning Commission and the Board of Commissioners unanimously approved and granted Sterigenics a Special Land Use Permit to use the Facility "for the purpose of a Sterilization Facility" and "subject to the Air Quality Permit issued by the State of Georgia, Department of Natural Resources, Environmental Protection Division."

27.     The Facility is located in an industrial area that includes other longstanding industrial uses, such as the adjacent 358-acre Plant McDonough-Atkinson natural gas-fired power plant, the Cobb County Sutton Wastewater Treatment Facility, and the Atlanta R.M. Clayton Wastewater Treatment Facility.

## II.     The Facility Operates in Compliance with Environmental Regulations and Has State-of-the-Art Emissions Controls.

28.     Environmental air quality matters related to Sterigenics' use of EO at the Facility are regulated by the EPD.  O.C.G.A. §§ 12-9-3(12) and 12-9-4.

29.     Sterigenics' Facility operates in compliance with environmental regulatory requirements, and the state-of-the-art EO emissions controls in place at the Facility consistently outperform those requirements.

30.     The Facility is subject to an Air Quality Permit for EO issued by the EPD.  Its current Air Quality Permit, No. 7389-067-0093-S-05-0, was issued on May 27, 2014 (the "Air Quality Permit").

31.     On August 7, 2019, Sterigenics entered into a Consent Order with the EPD (the "EPD Consent Order").

32.     The Consent Order stated:

> The [EPD] requested updated information from [Sterigenics] in order to conduct a modeling analysis to better characterize the ethylene oxide concentrations in areas surrounding the facility.  In June 2019 the [EPD] completed its modeling analysis of emissions from the Facility, which indicate that risk from ethylene oxide concentrations in residential areas near the Facility does not exceed 100-in-1 million (1 in 10,000), which the US EPA uses in regulations as a general guide for determining the maximum acceptable lifetime cancer risk.

33.     The Consent Order further stated, "[T]o the extent that the Division can ascertain, Respondent is operating the Facility in compliance with the Permit and all applicable Federal and State air regulations[.]"

34.     Despite its compliance with the Air Quality Permit and all federal and state air regulations, Sterigenics voluntarily made certain enhancements to its

9

emissions control system at the Facility to further reduce EO emissions pursuant to its voluntary agreement in the Consent Order (the "EPD System Enhancements").

35.   The EPD System Enhancements provide the Facility with the best available technology to further reduce EO emissions at the Facility beyond their already safe levels.  With the EPD System Enhancements, the Facility's emissions controls system is state-of-the-art among all other sterilization facilities in the United States and captures more than 99.99% of EO emissions, including indoor fugitive emissions.

36.   In an April 1, 2020 letter posted on the EPD's public website, the EPD stated that on March 24, 2020, "the EPD staff observed that the new pollution control equipment has been installed and is operational."

37.   On May 12, 2020, the EPD terminated the Consent Order, noting Sterigenics' "full and complete performance of each condition" of the Consent Order.

## III.   The Court Enjoined County Officials' Unlawful Efforts to Close the Facility.

38.   Since September of 2019, County officials have been trying to close the Facility for political purposes based on unfounded environmental matters the County has no authority to regulate.

39.   In September and October 2019, County officials manufactured a sham

basis to close the Facility on an unfounded "certificate of occupancy" issue.  They took that unlawful action as an improper pretext to close the Facility because of unfounded political pressure the County has received from local activists regarding unfounded environmental claims related to the Facility's use of EO.

40.    Sterigenics was forced to sue the County officials to reopen the Facility after they refused to allow the Facility to resume its essential medical product sterilization operations for months.  Case No. 1:20-cv-01382-WMR, Dkt. 1.

41.    After Sterigenics filed that lawsuit, this Court entered an April 8, 2020 order enjoining the County officials' closure of the Facility pending a final judgment in the case, which allowed the Facility to resume its essential operations to sterilize critically-needed medical products.  *Id.* at Dkt. 16.

## IV.    Defendants Arbitrarily Devalue All Residential Properties Within Two Miles of the Facility.

42.    After the Court issued its April 8 Order, Defendants (all political appointees of the County Board of Commissioners) targeted Sterigenics in a different way, this time cutting all residential property values within a two-mile radius of its Facility by ten percent, claiming that Sterigenics was the reason for the devaluation.  **Exhibit A** at 2.

43.     Specifically, on April 15, 2020, Defendants voted to impose this across-the-board devaluation because of a purported "environmental air quality concern surrounding the Sterigenics plant." *Id.*

44.     Defendants took this action as members of the BTA arbitrarily, unreasonably, and without supporting data reflecting that the fair market values of the properties had actually decreased, much less because of Sterigenics' Facility. *See, e.g., id.*

45.     As stated in the minutes of the BTA's April 15, 2020 meeting:

> The BTA recognizes that there is an environmental air quality concern surrounding the Sterigenics plant.   To date, there has been limited sales/listing activity occurring within a 2-mile radius of the plant. *The lack of data makes it difficult to determine the extent of this issue and its impact on property values in this area.*  However, the BTA *feels* it is appropriate to reduce residential property values across-the-board by 10% within this study area for tax year 2020 to account for the issue.   This entire area will be reviewed again for tax year 2021 to determine if sufficient sales data exists to warrant further adjustments at that time.

> Motion made by Assessor Post and seconded by Vice Chair to adjust all EPD designated areas, within a 2-mile radius by 10%, including New Construction properties and excluding all properties with nominal values.

> The Board also made a unanimous vote to include reason code "EPD Identified Environmental Issue" on all 2020 notices in the EPD designated areas.

*Id.* (emphasis added).

46.     In late May 2020, more than 5,000 homeowners within a two-mile radius of the Facility began receiving notices from the BTA stating that their properties had been "adjusted to reflect current market value" because of an "Epd-identified environmental issue."  A sample of such a notice is attached as **Exhibit B.**

## V.      Property Owners Intend to File a Class Action Lawsuit Against Sterigenics Based on Defendants' Devaluation of Their Properties.

47.     Defendants' arbitrary and unfounded ten percent devaluation of more than 5,000 residential properties within a two-mile radius of Sterigenics' Facility for County tax assessments is causing Sterigenics substantial reputational harm.

48.     After sending the tax assessment notices to the landowners within a two-mile radius of Sterigenics' Facility, the BTA told landowners that Defendants' devaluation of their properties was because of their proximity to the Facility.

49.     On July 8, 2020, the Marietta Daily Journal ran an article titled, "Property values near Sterigenics plant drop 10%; more than 5,000 homes affected." **Exhibit C**.  The article reported, "The decision for an across-the-board devaluation was made in a unanimous vote by the county Board of Tax Assessors, and affects just under 6,000 properties within a 2-mile radius of the Sterigenics plant, said Stephen White, the board's director and chief appraiser. . . ."  *Id.*

50.     On August 5, 2020, WXIA "11Alive" aired a story titled, "Class action

13

lawsuit being prepared against Sterigenics."[1]  The story reported:

> Andrew Kurt and his wife are among those filing suit against that facility . . . .  Kurt told 11Alive they moved into the Park at Vinings subdivision in 2013.  Then, two months ago they received a notice from the Cobb County Tax assessor's [sic] office that the tax assessed value of their home had dropped 10% due to a Georgia Environmental Protection Division 'Identified Environmental Issue.'
>
> 'It's jarring because our home value is the biggest value we have in terms of materialiy.  [sic]  So, that's huge,' Kurt said.
>
> 'If you call them [the BTA], they tell you indeed it's because of the Sterigenics plant,' he added.
>
> 11Alive did call the Cobb County Tax Assessor's Office and they said, in their opinion, yes, having a plant that uses ethylene oxide to sterilize medical equipment did devalue nearby homes. . . .
>
> But the Kurts are not alone. The tax assessor's office told 11Alive more than 5,000 homeowners received a similar letter with the same devaluation notice - sent to everyone living within a two-mile radius of the Sterigenics plant.
>
> . . . .
>
> So, now Kurt and others have joined a class action lawsuit

---

[1]   https://www.11alive.com/video/news/local/class-action-lawsuit-being-prepared-against-sterigenics/85-20493f01-8df7-4411-b201-7eb8c5eb7991;        Homeowners near facility emitting toxic gas fight back after home values fall over 'environmental issue,'" WXIA (Aug. 5, 2020), https://www.msn.com/en-us/news/us/homeowners-near-facility-emitting-toxic-gas-fight-back-over-environmental-issue/ar-BB17CigR (**Exhibit D**).

> against Sterigenics, calling it their last hope at health and
> full value of their home.
>
> The goal, 'absolutely recoup our value that's obvious,'
> Kurt said. 'But also to have Sterigenics close down
> permanently.'

51.     Defendants' unlawful actions have therefore caused Sterigenics to

suffer substantial reputational harm and face imminent economic harm from having

to defend itself against an imminent class action lawsuit the property owners intend

to file based on Defendants' unlawful ten percent devaluation of more than 5,000

properties in the BTA's 2020 tax assessments.

## COUNT I – Declaratory Judgment

52.     Sterigenics re-alleges and incorporates paragraphs 1 through 51 of this

Complaint.

53.     Defendants' ten percent devaluation of more than 5,000 residential

properties within a two-mile radius of Sterigenics' Facility for tax assessment

purposes was arbitrary, unreasonable, and unlawful under Georgia's tax laws.

54.     Georgia law requires the BTA to assess taxes on the individual fair

market value of each taxable property.  O.C.G.A. §§ 48-5-6, 48-5-7(a).

55.     Georgia law requires the BTA to "see that all taxable property within

the county is assessed and returned at its fair market value and that fair market values

as between the individual taxpayers are fairly and justly equalized so that each

taxpayer shall pay as nearly as possible only such taxpayer's proportionate share of taxes." O.C.G.A. § 48-5-306(a); Ga. Comp. R. & Regs. 560-11-10-.01(3) ("[T]he assessment placed on each parcel of property shall be the assessment established by the county board of tax assessors as provided in Code section 48-5-306.").

56.    Fair market value is defined as "the amount a knowledgeable buyer would pay for the property and a willing seller would accept for the property at an arm's length, bona fide sale." O.C.G.A. § 48-5-2.

57.    Pursuant to O.C.G.A. § 48-5-269.1, the Georgia Department of Revenue ("DOR") has adopted specific appraisal procedures for determining a property's fair market value in an Appraisal Procedures Manual codified at Ga. Comp. R. & Regs. 560-11-269.09 (the "Appraisal Regulations"). Ga. Comp. R. & Regs. 560-11-269.01(1); *id.* 560-11-269.09.

58.    To determine each taxable property's individual fair market value, the BTA's appraisal staff is required by law to abide by the Appraisal Regulations when determining a property's fair market value for tax assessment purposes. Ga. Comp. R. & Regs. 560-11-10-.01(1) and (3); *id.* 560-11-10-.09(1) ("The appraisal staff shall follow the provisions of this Rule when performing their appraisals of real property."); *see also* O.C.G.A. § 48-5-269.1 ("The manual adopted by the commissioner pursuant to this Code section shall be utilized by county property

appraisal staff in the appraisal of tangible real and personal property for ad valorem tax purposes.").

59.   The Appraisal Regulations require the BTA's appraisal staff to determine the fair market value of a property's land and improvements (*i.e.*, a house) separately to determine the property's total fair market value.  *Id.* at 560-11-10-.09(3)(a).

60.   To determine the fair market value of a property's land, the Appraisal Regulations require the use of specific appraisal methodologies:  the "sales comparison" methodology or "income methodology," giving preference to the sales comparison approach.  *Id.* at 560-11-10-.09(3).

61.   To determine the fair market value of a property's improvements, the Appraisal Regulations require the use of specific methodologies:  the "direct sales comparison approach," the "cost approach" or the "income approach."  *Id.* at 560-11-10-.09 (4).

62.   The DOR regulations state, "The county board of tax assessors may not adopt local procedures that are in conflict with Georgia law or the procedures required by this manual." Ga. Comp. R. & Regs. 560-11-10-.01(3).

63.   In addition, Georgia law expressly precludes arbitrary and unreasonable valuations of properties for tax purposes by the BTA.

64.     Defendants' ten percent devaluation of all residential properties within a two-mile radius of the Sterigenics' Facility violates Georgia law because it does not assess each property at its fair market value and does not fairly and justly equalize fair market values as between the individual taxpayers in the County.

65.     Defendants' ten percent devaluation of all residential properties within a two-mile radius of the Sterigenics' Facility also violates Georgia law because it does not represent a determination of each property's fair market value in accordance with any of the required appraisal methodologies set forth in the Appraisal Regulations.

66.     Defendants' ten percent devaluation of all residential properties within a two-mile radius of the Sterigenics' Facility also violates Georgia law because it was an arbitrary and unreasonable determination of each property's value.

67.     As the minutes of the BTA's April 15, 2020 meeting reflect, Defendants had no data supporting their ten percent devaluation of the properties at issue:

> To date, there has been limited sales/listing activity occurring within a 2-mile radius of the plant. *The lack of data makes it difficult to determine the extent of this issue and its impact on property values in this area.* However, the BTA *feels* it is appropriate to reduce residential property values across-the-board by 10% within this study area for tax year 2020 to account for the issue.

**Exhibit A** (emphasis added).

68.   Georgia law does not allow the BTA to apply a uniform across-the-board reduction of numerous properties' valuations for tax assessment purposes.

69.   Defendants' unlawful action to reduce the tax assessment values of properties within a two-mile radius of its Facility is causing Sterigenics substantial reputational harm.   Thousands of homeowners now incorrectly believe that Sterigenics' Facility has caused their home value to decrease by ten percent.

70.   Defendants' unlawful action to reduce the tax assessment values of properties within a two-mile radius of its Facility is also causing Sterigenics to face imminent and substantial financial harm.   Residents within a two-mile radius of Sterigenics' Facility are preparing a class action lawsuit against Sterigenics on behalf of more than 5,000 landowners to recover alleged property value losses based on Defendants' unlawful determination that the Facility has devalued their properties.   Sterigenics faces potential unfounded liability and incurring substantial legal fees and expenses in such a class action because of Defendants' unlawful action.

71.   An actual and substantial continuing controversy exists between Sterigenics and Defendants who have adverse legal interests concerning the legality of Defendants' determination that Sterigenics' Facility has devalued more than 5,000 residential properties within a two-mile radius of the Facility by ten percent.

72.     Because of Defendants' unlawful action, Sterigenics will continue to suffer injuries in the future if Defendants' determination that Sterigenics' Facility has devalued more than 5,000 residential properties within a two-mile radius of the Facility by ten percent is not declared unlawful and void.

73.     Pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57, Sterigenics is entitled to a judgment declaring that Defendants' devaluation of all residential properties within a two-mile radius of the Facility by ten percent is unlawful and void.

## PRAYER FOR RELIEF

WHEREFORE, Sterigenics respectfully requests the following:

a.      That process issue according to law;

b.      That the Court declare that Defendants' devaluation of all residential properties within a two-mile radius of the Facility by ten percent is unlawful and void.

c.      That the Court award Sterigenics its attorneys' fees and costs incurred in this case; and

d.      Any other relief this Court should deem just and appropriate.

[Signature block on following page]

20

Respectfully submitted this 14th day of August, 2020.

ALSTON & BIRD LLP

/s/ Clay Massey
W. Clay Massey
Georgia Bar No. 476133
Daniel F. Diffley
Georgia Bar No. 221703
Thomas P. Grantham
Georgia Bar No. 116523
Sara M. Warren
Georgia Bar No. 966948
1201 West Peachtree Street
Atlanta, GA 30309
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
clay.massey@alston.com
dan.diffley@alston.com
thomas.grantham@alston.com
sara.warren@alston.com

*Attorneys for Plaintiff Sterigenics U.S., LLC*